**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DION FERNANDES,** | : | **Civil No. 3:078-CV-2264** |
| | : | |
| **Plaintiff,** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **BOROUGH OF WEST PITTSTON,** | : | |
| **MAYOR WILLIAM GOLDSWORTHY,** | : | |
| **TERRI BUGELHOLL, BRIAN** | : | |
| **THORNTON, KEVIN LESCAVAGE,** | : | |
| **and PETE MUSINSKI,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

This civil rights case, which comes before the Court on a motion for summary judgment, presents two questions concerning the nature of a public employee's property right to a part-time government job, and the limitations which the First Amendment may place on local officials when discharging part-time employees. These constitutional questions are presented to the Court cast against the backdrop of the discharge of a local police officer, a part-time policeman who was fired after he was: (1) the subject of citizen complaints; (2) sanctioned for improper use of his police car; (3) disciplined for using a police computer intelligence network to gather information on fellow  police officers; (4) identified in pictures that were allegedly

posted on internet social networking sites, postings which allegedly depicted the officer at parties with under-aged youth; and (5) involved in an early morning, off-duty, alcohol-fueled scuffle with a fellow police officer at a neighboring borough police department.

For the reasons set forth below, it is recommended that the Court find, on these facts, that the discharge of this part-time police officer did not violate any rights guaranteed part-time public employees by the United States Constitution.

## II.    <u>Statement of Facts and of the Case.</u>

### A.    <u>Dion Fernandes</u>

In 2004, the Plaintiff, Dion Fernandes was hired as a police officer in West Pittston Borough. (Doc. 43, Ex.1, pp.12-13.) Fernandes worked as a West Pittston police officer for approximately fifteen months, until he was discharged in March 2006. (<u>Id</u>.)

Throughout his brief tenure with the West Pittston Borough Police Department, Fernandes was a part-time employee. (<u>Id</u>., pp.15-17.) Thus, Fernandes was never employed as a full-time police officer and was never embraced by the collective bargaining agreement which applied only to full-time police officers in the Borough of West Pittston. (Doc. 43, Ex. 1, p.27.) Indeed, during the time period embraced by this complaint, it would have been impossible to Fernandes to serve on-call at all

times with the West Pittston Police Department, since Fernandes was simultaneously working several other part-time jobs in various local municipalities. (Id., pp. 5-17.)

**B.**     **The 2005 West  Pittston  Borough Council Election**

At the time that Fernandes was first hired as a part-time West Pittston police officer, the Defendant, William Goldsworthy, was the mayor of West Pittston. Beginning in 2004, Mayor Goldsworthy recruited four other West Pittston residents–Terri Bugelholl, Brian Thornton, Kevin Lescavage and Pete Musinski– to run for election in the Spring 2005 Republican primary for positions on the West Pittston Borough Council. (Doc. 43, Ex. 2, pp. 9-14; Ex. 4, pp. 9-13; Ex. 5, pp.6-10; Ex. 6, pp.7-8) Together, these Borough Council candidates ran as the so-called "mayor's team", a slate of council candidates whose platform was one of support for various programs and initiatives fostered by Mayor Goldsworthy, and opposed in some respects by the then existing West Pittston Borough Council. (Id.)

Since there was no slate of democratic nominees in this particular municipal primary election, (Doc. 44, Ex.4, p. 9). the primary success of this slate of council candidates meant that these candidates were unopposed in the fall general election. However, despite being unopposed in the general election, this slate of candidates was unable to take office until January, 2006 after that general election was concluded.(Id.)

### C.    Dion Fernandes' Alleged Involvement in the West Pittston Borough Council Election

In connection with this local election, Fernandes alleges that he opposed the candidacy of this Borough Council slate favored by Mayor Goldsworthy. (Doc. 43, Ex. 1, pp. 74-78.) It is undisputed, however, that the nature of Fernandes opposition to this slate of candidates was both limited and, in some respects, muted.(Id.)

Fernandes' opposition to these candidates did not include voting against them. Indeed, in 2005 Fernandes was not a resident of West Pittston Borough and, therefore, could not vote in this local election. (Doc. 43, Ex. 1, pp. 75-77.) Furthermore, Fernandes presents no evidence that he actively engaged many types of in partisan political activity typically associated with electioneering: Thus, he did not post signs; was not employed by any candidates; did not actively distribute campaign literature; and did not engage in organized voter canvassing. Instead, according to Fernandes, his political activities in this campaign were limited to attending two breakfast functions at a local Moose Lodge, and getting out "word of mouth around town" opposing these council candidates. (Id.) Fernandes specifically denied any other involvement in this political campaign, (id.), and his involvement in this campaign was sufficiently muted that neither Mayor Goldsworthy, nor any members of this slate of council candidates, reported having any knowledge of his

2005 campaign activities.(Doc. 43 Ex.2, pp. 62-63; Ex. 4, 99.87-89; Ex. 5, p. 16; Ex. 6, p.13.)

###### D. Dion Fernandes' Job Performance Problems and Discharge

While West Pittston officials uniformly denied any knowledge of Fernandes' political activities in 2005, Fernandes' job performance as a part-time police officer was repeatedly the subject of local government concerns and inquiries throughout 2005 and early 2006. These inquiries began in June 2005, when Mayor Goldsworthy received constituent complaints from a local family regarding Fernandes' treatment of their child during a police encounter.(Doc. 43, Ex. 1, p.68; Ex. 4, pp.69-74.) Fernandes was questioned, and counseled, as a result of this citizen complaint.(Id.)

Despite this counseling, Fernandes continued to experience significant problems in his work at the West Pittston Police Department throughout 2005. Thus, in November 2005, Fernandes was suspended from the police department after it was determined that he had violated a borough policy forbidding police officers from taking patrol cars outside the borough without prior supervisory approval. (Id., Ex.1, pp.40-1; Ex. 4, pp.31-37.) Shortly after this disciplinary episode, in December 2005 Fernandes also had his access to JNET, an inter-agency computerized police intelligence network, curtailed after it was determined that Fernandes had been using

this JNET access to gather unauthorized information about other local police officers.(Id., Ex. 1,pp.35-37.)

By 2006, borough officials had also learned that an internet social networking site had posted photos purporting to be photographs of Fernandes at a party with under-aged youth. (Id., Ex.2, ,pp.27-30; Ex.6, pp.27-8.) This conduct became of separate area of concern for local officials, since Fernandes' actions depicted in these photographs raised questions regarding both his judgment, and his fitness as a police officer. (Id.) This conduct also became a topic in a civil rights lawsuit brought against Fernandes arising out of what was alleged to have been excessively aggressive law enforcement activities targeting juveniles. (Id., Ex. 1, pp. 85-87.)

Despite these concerns, when the new borough council was installed in West Pittston in early 2006, Fernandes' November 2005 suspension was lifted and he was reinstated to part-time police duties. (Id., Ex. 1, pp. 31-2.) However, within two months Fernandes became embroiled in yet another controversy involving an early-morning physical altercation with a fellow police officer, an altercation instigated by Fernandes while he was off-duty and after he had been drinking.(Id., Ex. 1, pp. 44-50, dep. Ex D-6.)

The incident occurred at approximately 3:30 a.m. on the morning of March 1, 2006, when a West Pittston police officer, Kenneth Burkhardt, drove in his police car

to the neighboring borough of Exeter, to discuss some police matters with an Exeter Borough police officer. (Id.) Fernandes, who had recently been suspended from his job for unauthorized use of a borough police car outside the borough, learned of this activity during the early morning hours of March 1.(Id.) Although he was not on-duty, Fernandes, who had admittedly been drinking earlier in the evening, decided to travel to the Exeter Police Department at 3:30 a.m. to confront his fellow West Pittston police officer regarding his use of the borough police car. (Id.)

At the Exeter Police Department, Fernandes became involved in a violent, hostile confrontation with his fellow police officer. In the course of this confrontation, Fernandes struck a filing cabinet with his fist, and reportedly shouted obscenities at his fellow West Pittston police officer. (Id.) Fernandes and Officer Burkhardt then came to blows, pushing and shoving one another until an Exeter police officer physically intervened, and commanded them to stop. (Id.) Exeter police then escorted Fernandes, who smelled of alcohol, from the borough police station.(Id.)

When this episode was reported to Mayor Goldsworthy by Exeter Borough officials, the Mayor and Borough Councilman Thornton conducted an inquiry into this matter. As part of this inquiry, borough officials met with Fernandes who discussed this incident. During this meeting, Fernandes confirmed that he had sought

out, confronted, and engaged in a physical altercation with a fellow police officer at 3:30 a.m. on March 1, 2006. Fernandes also made statements regarding this episode that cast further doubt upon his judgment and fitness, telling borough officials that if he had the opportunity to reflect upon his conduct he would not have changed his behavior and would still have chosen to confront a fellow officer at a neighboring police department in this angry, profane fashion.(Id., Ex. 1, pp.55-7; Ex. 2, pp. 34-5; Ex. 6, p.36.)

Presented with confirmation of this latest episode by Fernandes, coupled with an admission that he had no regrets about engaging in this scuffle with another member of the police department, borough officials resolved to act, and terminate Fernandes' employment. Accordingly, on March 14, 2006, borough officials notified Fernandes in writing that we was being terminated as an at-will employee of the West Pittston Police Department.

This lawsuit followed on December 13, 2007, with the filing of a nine-count civil complaint by Fernandes, naming the Borough, Mayor Goldsworthy, and Borough Council members Bugerholl, Thornton, Lescavage and Musinski as Defendants. (Doc. 1.) On March 27, 2008, Fernandes and the Defendants stipulated to the dismissal of five counts of this complaint, and further stipulated to a narrowing of the claims set forth in the regaining counts of the complaint. (Doc. 11.)

Narrowed by the parties in this fashion, two constitutional claims lie at the heart of Fernandes' civil rights complaint. First, in his complaint Fernandes asserted that the Defendants retaliated against him for his exercise of his First Amendment rights, in that they disciplined and discharged him because of his political support for other borough council candidates. In addition, Fernandes brought a due process claim against the Defendants, alleging that he had liberty and property interests in his employment as a West Pittston police officer, and that the Defendants denied him this liberty and property without due process.(Id.)

With respect to these two remaining claims, discovery has now closed in this case. (Doc. 39.) With the close of discovery, the Defendants have moved for summary judgment, arguing that Fernandes has failed to demonstrate either a viable due process violation or a valid First Amendment retaliation claim. (Doc. 44.)

This motion has been fully briefed by the parties, (Docs. 45, 46, 47, 48 and 49) and is now ripe for resolution. For the reasons set forth below, it is recommended that this motion for summary judgment be granted.

## II.     Discussion

### A.     Rule 56– The Legal Standard.

The Defendants have moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought

should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest

solely on assertions made in the pleadings, legal memoranda, or oral argument."

Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Thus, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995). This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of

fact which would preclude summary judgment. With respect to such claims, it is well-settled that: "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial." Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223, n. 2 (3d Cir. 2000), citing, Stelwagon Mfg. V. Tarmac Roofing, Suys., Inc., 63 F.3d 1267, 1275, n. 17 (3d Cir. 1995). In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment. See Buttice v. G.D. Searle & Co., 938 F.Supp. 561 (E.D.Mo.1996). Additionally, a party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. See Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage. Henry v. Colonial Baking Co. of Dothan, 952 F.Supp. 744 (M.D.Ala.1996).

Bouriez v. Carnegie Mellon University, No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005) Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment. Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate. See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon University,

No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group International v. Oriental Rug Importers Association, Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F.App'x 896, 899 (3d. Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. Of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)."[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

**B.** **The Plaintiff's Complaint Fails to Articulate a Constitutionally-Recognized Property Interest Entitled to Due Process Protection**

At the outset, in assessing whether Fernandes' complaint sets forth a viable cause of action which can survive summary judgment, we begin with the familiar proposition that "[t]he federal civil rights statute here at issue, 42 U.S.C. § 1983, "is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 145 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). [Therefore] [t]o establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury. Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir.1998)." Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005).

In this case, Fernandes first alleges that West Pittston Borough officials violated his due process rights when they terminated his employment as a police officer following this escalating series of personnel problems which culminated with a 3:30 a.m. shoving match between Fernandes and a fellow police officer. With respect to this Fourteenth Amendment due process claim, the precise tenor of Fernandes' argument is not always entirely clear. At times, Fernandes seems to be advancing Fourteenth Amendment claims grounded in alleged substantive and procedural due process violations, as well as a claim based upon a "stigma-plus" loss of a liberty interest. However, despite how the claim is cast, the gravamen of his

Fourteenth Amendment due process argument can be simply stated: Fernandes asserts that as a part-time borough police officer he had a constitutionally recognized property and liberty interest in continued employment by West Pittston Borough, a constitutional right to a part-time government job of such a profound dimension that his termination following a scuffle with another police officer violated the United Sates Constitution.

The difficulty with this proposition, the premise upon which Fernandes' entire due process claim rests, is that it has been consistently rejected by the courts. Indeed, in a public employment context, the contours of the Fourteenth Amendment's due process protections are clearly defined. In this setting, it is well-established that:

> The Fourteenth Amendment to the United States Constitution prohibits deprivations "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The first step in analyzing a due process claim is to determine whether the "asserted individual interest ... [is] encompassed within the [F]ourteenth [A]mendment's protection of life, liberty, or property." Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir.2000) (internal citations and quotations omitted).

Elmore v. Cleary, 399 F.3d at 282.

As to this threshold question regarding whether a part-time government job is one of those core, basic, fundamental, constitutionally-protected property interests that are afforded substantive due process protection, this Court recently aptly summarized the state of the law, noting that, for purposes of substantive due process analysis:

Fundamental rights are relatively few in number. At present, the United States Court of Appeals for the Third Circuit has applied substantive due process protection to the right to own real property, but it has repeatedly declined to extend that protection to other rights, including those such as public employment, created by state law. Nicholas, 227 F.3d at 141 ("[W]e have so far limited non-legislative substantive due process review to cases involving real property ownership."); see also, e. g., Gikas v. Wash. Sch. Dist., 328 F.3d 731, 736 (3d Cir.2003) (holding that employment preference granted to veterans in public hiring process not a property right); Reich v. Beharry, 883 F.2d 239, 244-45 (3d Cir.1989) (finding that service contract with state not a property right); Mauriello v. Univ. of Med. & Dentistry of N.J., 781 F.2d 46, 50 (3d Cir.1986) (concluding that continued enrollment at public university not a property right). As such, a public employee discharged from his or her job lacks property interest sufficient to support a substantive due process claim).

D'Altilio v. Dover Tp., No. 06-1931, 2007 WL 2845073, 5 (M.D.Pa. Sept. 26, 2007).

In short, substantive due process claims in the public employment context premised on the view that a government job is a fundamental constitutional property right afforded to all Americans have been uniformly rebuffed by the courts. Therefore, to the extent that Fernandes' Fourteenth Amendment claim is based upon some broadly framed substantive due process right to a part-time government job, this claim simply fails as a matter of constitutional law.

Nor can Fernandes sustain a procedural due process claim in this case based upon the termination of his part-time borough job. In this regard:

The Fourteenth Amendment doctrine of procedural due process prevents the government from depriving an individual of liberty or property interests without due process of law. U.S. Const., amend. XIV, § 1. To assert a procedural due process violation, a plaintiff must demonstrate that (1) he or she was deprived of a liberty or property interest and (2) the procedures afforded the plaintiff incident to that deprivation failed to comport with the requirements of due process. Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir.2006). A protected property interest exists only if the plaintiff has "a legitimate claim of entitlement" to the interest. Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Hill, 455 F.3d at 234; Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir.2005) (stating that property interest in employment requires entitlement to continued employment). While property interests receive protection under the federal Constitution, they are created by other law, such as that of the states. Roth, 408 U.S. at 577 (holding that property interests derive from independent sources such as state law); Hill, 455 F.3d at 234 (observing that the existence of a property interest is "a question answered by state law); Pappas v. City of Lebanon, 331 F.Supp.2d 311, 316 n. 9 (M.D.Pa.2004); Majewski v. Luzerne County, No. 3:05cv2396, 2007 WL 1074769, at *19 (M.D.Pa. April 9, 2007).

D'Altilio v. Dover Tp. 2007 WL 2845073, at *5.

However, to assert a procedural due process claim based upon the loss of a government job, it is evident that: " To have a property interest in a job, . . ., a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment. The decisional law is clear that an at-will employee does not have a legitimate entitlement to continued employment because she serves solely at the pleasure of her employer. Therefore, once a court determines that a public employee "held [her] position at the will and

pleasure of the [governmental entity]," such a finding "necessarily establishes that [the employee] had no property interest" in the job sufficient to trigger due process concerns." Elmore v. Cleary, 399 F.3d at 282 (citations omitted). Therefore, in assessing whether a particular government job qualifies as "property" subject to procedural due process protection, "[a]s an initial matter, state law determines whether such a property interest exists. Brown v. Trench, 787 F.2d 167, 170 (3d Cir.1986); see also Kelly v. Borough of Sayreville, 107 F.3d 1073, 1077 (3d Cir.1997) ('State law creates the property rights protected by the Fourteenth Amendment.')." Elmore v. Cleary, 399 F.3d at 282.

Pennsylvania law, in turn, sets demanding standards in this field. Pennsylvania is an "at-will" employment state. Thus, "under controlling Pennsylvania law, a 'public employee takes his job subject to the possibility of summary removal by the employing authority. He is essentially an employee-at-will' Scott v. Phila. Parking Auth., 402 Pa. 151, 166 A.2d 278, 280 (1960); see also Rank v. Twp. of Annville, 163 Pa.Cmwlth. 492, 641 A.2d 667, 670 (1994); Bolduc v. Bd. of Supervisors, 152 Pa.Cmwlth. 248, 618 A.2d 1188, 1190 (1992). Stated otherwise, a public employee in Pennsylvania generally serves at the pleasure of [his or] her employer and thus has no legitimate entitlement to continued employment." Elmore v. Cleary 399 F.3d at 282.

This general rule of "at-will" public employment admits of only three, narrowly-tailored exceptions: "First, the General Assembly may create a protected property interest through legislative action or authorization. Second, a protected property interest may emerge from a contract that grants the plaintiff protected status, such as employment tenure or welfare benefits. Finally, an employment contract permitting dismissal only for cause will create a property interest." D'Altilio v. Dover Tp. 2007 WL 2845073 at * 6 (citations omitted). Applying these standards, courts have repeatedly held that discharged local government employees in Pennsylvania typically do not have a property interest in their jobs sufficient to sustain a procedural due process claim. See, e.,g., Elmore v. Cleary, supra; Dobson v. Northumberland County, 151 F.App'x 166 (3d Cir. 2005); Gikas v. Wash. Sch. Dist., 328 F.3d 731, 736 (3d Cir.2003); D'Altilio v. Dover Tp., supra,; Holocheck v. Luzerne County Head Start, Inc., 385 F.Supp.2d 491 (M.D. Pa. 2005). Thus, in the absence of some specific statutory or contractual entitlement to a job, courts have rejected procedural due process claims, like those advanced here, made by police and corrections officials seeking reinstatement to local government jobs. See Grabiak v. Pennsylvania State Police, 276 F.App'x 210 (2d Cir. 2008); Lord v. Erie County, No. 08-213, 20110 WL 56095 (W.D. Pa. Jan. 5, 2010)

These basic constitutional tenets are fatal to any procedural due process claim advanced by Fernandes in this case. At the outset, it is evident that Fernandes cannot avail himself of any contractually created property rights to his part-time job since it is undisputed that Fernandes' position was not embraced by the collective bargaining agreement that covered full-time police officers employed by the borough.

Nor can Fernandes cite to any statutory property rights conferred upon him by Pennsylvania's General Assembly. In an attempt to identify a statutorily -established property interest in his job, Fernandes relies upon Pennsylvania's Police Tenure Act, 53 Pa.C.S.A. §812. However, this claim cannot withstand close scrutiny. Indeed, the plain language of the Act refutes Fernandes' claims since the Act only confers statutory tenure rights upon "a regular full time police officer in any police department of any township of the second class, or any borough or township of the first class within the scope of this act." 53 Pa. C.S.A. § 812. With respect to the phrase, "a regular full time police officer", it has been held that: "[t]he test to be imposed therefore, is not the number of days, length of hours, or terms of employment but rather whether or not the duties were such that [the police officer] was 'available for full employment,' that is on call *at any and all times*." Petras v. Union Tp., 409 Pa. 116, 417, 187 A.2d 171, 174 (Pa.1963)(emphasis added). Applying this test, it has been held that a part-time police officer who holds other jobs cannot be available at

any and all times and, therefore, by definition, is not a full-time law enforcement officer under state law. <u>See, e.g.</u>, <u>Mullen, v. Borough of Parkesburg</u>, 572 A.2d. 859 (Pa. Cmwlth 1990); <u>Yatzor v. Showman</u>, 290 A.2d 425 (Pa. Cmwlth 1972).

In this case, it is undisputed that Fernandes worked several other jobs during the time when he was employed by West Pittston. This other, outside employment necessarily means that there were occasions when Fernandes physically could not have been available for duty at West Pittston, and compels the conclusion that he was not a full-time police officer who was on-call at any and all times. Since Fernandes does not fall within the ambit of those police officers given tenure rights by the Police Tenure Act, he cannot rely upon this act to sustain a procedural due process claim here.[1] Since as a matter of law Fernandes had no contractual or statutory property rights in this part-time police officer position, "[h]e is essentially an employee-at-will," <u>Scott v. Phila. Parking Auth</u>., 402 Pa. 151, 166 A.2d 278, 280 (1960), under state law and may not sustain a procedural due process claim arising out of the

---

[1]Fernandes has attempted to create a disputed factual issue on this question by tendering an affidavit to the court which, in essence, states that he stood ready to work for West Pittston at any time that he was called upon to serve, and never declined work at West Pittston. However, Fernandes' belated assurance that he stood ready to work at any and all times does not change the undisputed fact that due to his other jobs there were times when it was physically impossible for him to be on-call at West Pittston. <u>See, e.g.</u>, <u>Mullen, v. Borough of Parkesburg</u>, 572 A.2d. 859 (Pa. Cmwlth 1990); <u>Yatzor v. Showman</u>, 290 A.2d 425 (Pa. Cmwlth 1972).

termination of his employment after a profane, alcohol-fueled altercation with another police officer.

Finally, while he does not specifically address this claim in his motions pleadings, Fernandes' complaint appears to have also contained a Fourteenth Amendment claim based upon an assertion that he was deprived a liberty interest due to the stigma of being fired from his part-time government job. The legal standards which govern such liberty interest claims can be simply stated:

> "Reputation alone is not an interest protected by the Due Process Clause." Dee v. Borough of Dunmore, 549 F.3d 225 (3d Cir.2008) (internal citations omitted). "To make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest ... guaranteed by state law or the Constitution." Id. "In the public employment context, the "stigma-plus" test has been applied to mean that when an employer "creates and disseminates a false and defamatory impression about the employee in connection with his termination," it deprives the employee of a protected liberty interest." Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir.2006) citing Codd v. Velger, 429 U.S. 625, 628 (1977). "To satisfy the "stigma" prong of the test, it must be alleged that the purportedly stigmatizing statements (1) were made publicly, and (2) were false." Hill, 455 F.3d at 225 (internal citations omitted).

Conrad v. Northumberland County, No. 09-1326, 2010 WL 454960, * 6 (M.D.Pa. Feb. 3, 2010).

In this case, any "stigma-plus" Fourteenth Amendment liberty interest claim made by Fernandes fails for a simple reason. The justification given by the borough

for terminating Fernandes as an at–will employee was his profane 3:30 a.m. physical encounter with a fellow police officer, an encounter which followed a series of job disciplinary actions arising out of misuse of cars, and computers. With respect to this final triggering event which led to his discharge, Fernandes concedes that he did what was alleged. Indeed, Fernandes has stated that he would do it again, and become involved in an altercation with another police officer if the same circumstances presented themselves in the future.

Given Fernandes' acknowledgment that this incident occurred as described, and his expressed lack of insight or remorse, the Plaintiff simply cannot meet the requirements of a "stigma-plus" cause of action. He cannot show that "the purportedly stigmatizing statements (1) were made publicly, and (2) *were false*." Id.(emphasis added.) Indeed, Fernandes un-apologetically admits that facts surrounding the reason given for his discharge were all true. In this setting, we find that the truth is a defense to a "stigma-plus" claim, and since "reputation alone is not an interest protected by the Due Process Clause," Dee v. Borough of Dunmore, 549 F.3d 225 (3d Cir.2008), the borough's truthful announcement that it was terminating Fernandes' employment after his shouting match and scuffle with a fellow police officer at the Exeter Borough police department defeats any such Fourteenth Amendment claim.

## C.    **Fernandes' First Amendment Retaliation Claim Also Fails**

Finally, we find that Fernandes cannot sustain a First Amendment retaliation

claim in this case.  To succeed on such a First Amendment claim, Fernandes must

make a three-part showing.

> To make out a *prima facie* case, [a plaintiff] must show that (1) []he was
> employed at a public agency in a position that does not require political
> affiliation, (2) []he was engaged in constitutionally protected conduct,
> and (3) this conduct was a substantial or motivating factor in the
> government's employment decision. See, e.g., Stephens, 122 F.3d at 176.
> Once []he makes this demonstration, the [defendants] may "avoid a
> finding of liability by proving by a preponderance of the evidence that
> the same employment action would have been taken even in the absence
> of the protected activity." Id.; see also Mt. Healthy City Sch. Dist. Bd.
> of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471
> (1977).

Galli v. New Jersey Meadowlands Comm'n,  490 F.3d 265, 271 (3d Cir. 2007). See

also, Bell v. City of Philadelphia, 275 F.App'x 157 (3d Cir. 2008); Kougher v. Burd,

274 F.App'x 197 (3d Cir. 2008);  McKee v. Hart, 436 F.3d 165 (3d Cir. 2006);

Brown v. Armenti, 247 F.3d 69 (3d Cir. 2001).Where a plaintiff fails as a matter of

law to sustain his burden of proof on any of these elements of a First Amendment

claim, defendants are entitled to judgment in their favor as a matter of law. Id.

In this case, it is apparent that Fernandes was a public employee, who engaged

in constitutionally protected activity. Thus, the first two elements of a First

Amendment claim are satisfied. However, Fernandes' case completely fails on the third essential element to such a claim, in that he completely fails to show that his First Amendment activities were a substantial or motivating factor in the decision to terminate him.

To establish this crucial component to a constitutional retaliation claim, Fernandes must make an exacting showing. In this setting:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir.1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir.2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Moreover, when examining these causation issues, we are specifically admonished that:

> A court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate. Consequently, a putative plaintiff by engaging in protected activity might be able to insulate himself from

actions adverse to him that a public actor should take. The point we make is not theoretical as we do not doubt that public actors are well aware that persons disappointed with official decisions and actions frequently bring litigation against the actors responsible for the decisions or actions in their individual capacities, and the actors surely would want to avoid such unpleasant events. Thus, it would be natural for a public actor to attempt to head off a putative plaintiff with the unwarranted expenditure of public funds. Courts by their decisions should not encourage such activity and, by enforcing the requirement that a plaintiff show causation in a retaliation case, can avoid doing so as they will protect the public actor from unjustified litigation for his appropriate conduct. In this regard we recognize that often public actors such as those in this case must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actors' decisions.

Id. at 267-68.

It is on this essential element–causation–that Fernandes' First Amendment claim founders. Fernandes' proof of causation fails on several levels. At the outset, Fernandes has not shown that the Defendants were even aware of his political activities in connection with the borough election. Indeed, on this critical component of causation, knowledge of the Plaintiff's activities, the record clearly reflects that none of the Defendants expressed any awareness of Fernandes' political activities. This is hardly surprising given the isolated nature of these activities, as described by Fernandes himself. Furthermore, Fernandes' rejoinder to this evidence directly refuting any knowledge of his political activities is wholly inadequate, consisting of nothing more than a speculative assertion that the Defendants must have known about

his political views since he rode on occasion in an automobile with some of their political opponents. It is axiomatic that a party cannot resist a summary judgment motion by merely advancing factual assertions that are colorable, conclusory, or speculative. Anderson, 477 U.S. at 249. Therefore, Fernandes' invitation to speculate and attribute knowledge of facts to the Defendants based upon nothing more than the identity of his driving companions is clearly insufficient.

Indeed, the undisputed facts thoroughly rebut any assertion of a causal link between Fernandes' firing and the West Pittston Borough Council election. Thus, the uncontested evidence shows that Fernandes was disciplined in November and December 2005 for violating vehicle and computer usage policies, *prior to* the installation of the new borough council that Fernandes claims to have politically opposed. Moreover, once that new borough council was in place in January of 2006, that borough council actually *vacated* Fernandes' suspension, and reinstated him to work, steps that are utterly inconsistent with a First Amendment retaliation claim. Only after an intervening event took place in March 2006– Fernandes' pre-dawn, obscenity-laced altercation with another police officer–did borough officials terminate Fernandes' employment. The borough followed this course only after Fernandes met with borough officials, expressed a complete lack of remorse for his

conduct, and vowed that he would follow the same course if he was presented with a similar situation in the future.

These undisputed facts completely undermine any claim by Fernandes of a causal link between his modest, self-described 2005 political activities and his discharge in the wake of a fight with another police officer in March 2006. Furthermore, the history of Fernandes' job performance in 2005 and 2006– a history marked by citizen complaints; improper use of his police cars and computer intelligence networks; allegedly inappropriate postings on internet social networking sites; and an early morning, off-duty, alcohol-fueled scuffle with a fellow police officer–amply demonstrates that "the same employment action would have been taken even in the absence of the protected activity," Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265, 271 (3d Cir. 2007), a finding which is also fatal to this First Amendment claim.

In sum, the firing of Dion Fernandes does not describe an infraction of constitutional dimension, since Fernandes had no property right to a part-time government job and the evidence completely rebuts any claim that his discharge was related to his political activities. Instead, the evidence of record overwhelmingly demonstrates that Fernandes' firing was a consequence of his own conduct, conduct which culminated in a profane, altercation with a fellow police officer. On these facts,

Fernandes' complaint fails as a matter of law. Therefore, it is recommended that the Defendants' summary judgment motion be GRANTED.

## IV.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Defendants' motion for summary judgment be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions

Submitted this 23d day of July, 2010.

_S/Martin C. Carlson_
Martin C. Carlson
 United States Magistrate Judge