# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DION FERNANDES,<br>    Plaintiff | No. 3:07cv2264 |
| | (Judge Munley) |
| v. | |
| BOROUGH OF WEST PITTSTON;<br>MAYOR WILLIAM GOLDSWORTY;<br>TERRI BUGELHOLL;<br>BRIAN THORNTON;<br>KEVIN LESCAVAGE; and<br>PETE MUSINSKI,<br>    Defendants | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Before the court are plaintiff's objections to the report and recommendation of Magistrate Judge Martin C. Carlson, which proposes that the court grant defendants' motion for summary judgment.

**Background**

This case arises out of plaintiff's employment as a police officer with Defendant Borough of West Pittston, Pennsylvania. The parties disagree about the nature of plaintiff's employment. The defendants contend that plaintiff worked as a part-time police officer, while plaintiff insists that, pursuant to Pennsylvania law, he served as a full-time officer. (Compare Defendants' Statement of Material Facts (Doc. 42) (hereinafter "Defendants' Statement") at ¶ 2; Plaintiff's Answer to

Defendants' Statement of Material Facts (Doc. 47) (hereinafter "Plaintiff's Statement") at ¶ 2).

Plaintiff began working for the Borough in 2004. (Defendants' Statement at ¶ 4). His schedule consisted of a thirty-two-hour week beginning in December 2005. (Id. at ¶ 6). The parties disagree about whether this schedule constituted a full-time job. (Id.; Plaintiff's Statement at ¶ 6). Plaintiff became the subject of several disciplinary actions during the course of his employment. On December 9, 2005, Defendant Mayor William Goldsworthy wrote plaintiff to inform him that a complaint had been received that he had taken a police car outside of the Borough while on duty. (Defendants' Statement at ¶ 5). Plaintiff was suspended from December 13, 2005 until the next regularly scheduled city council meeting. (Id.). On December 17, 2005 plaintiff received a thirty-day suspension for misuse of a Pennsylvania state identification system. (Id. at ¶ 7).

The Borough council majority changed in late 2005. (Id. at ¶ 8). After this change in council membership, members extended his suspension for an additional thirty days. (Id.). The parties disagree about the reasons for this extended suspension. Defendants allege that the council used the additional time to review the suspension. (Id.). Plaintiff insists that these additional days came as retaliation for his support of council candidates who had challenged the members who determined his suspension. (Plaintiffs' Statement at ¶ 8). The council formally acted to remove plaintiff's suspension and reinstate him to his position in February 2006. (Defendants' Statement at ¶ 9). Plaintiff insists that the Borough never allowed him

2

to resume his duties, despite this reinstatement. (Plaintiff's Statement at ¶ 9).

In March 2006, Defendants Brian Thornton and Pete Musinski investigated an incident that involved a trip by plaintiff to the Wyoming Borough Police Department in the middle of the night. (Defendants' Statement at ¶ 10). Plaintiff had allegedly made that trip to confront West Pittston Police Officer Kenneth Burkhardt about bringing a West Pittston police vehicle outside borough while on duty. (Id.). Defendants insist that plaintiff was under the influence of alcohol when he made this trip. (Id.). Plaintiff contends that he made the trip to Wyoming Borough to investigate a telephone report that a West Pittston police cruiser was parked in Wyoming. (Plaintiff's Statement at ¶ 10). Plaintiff claims that he was not under the influence of alcohol, but had consumed perhaps one or two beers. (Id.). The Borough terminated plaintiff's employment on March 14, 2006. (Defendants' Statement at ¶ 11). Plaintiff was not subject to a collective bargaining agreement when he lost his job. (Id. at ¶ 12).

Plaintiff contends that Defendant Musinski offered several reasons for plaintiff's termination. (Plaintiff's Counterstatement of Material Facts (hereinafter "Plaintiff's Counterstatement") at ¶ 12).[1] Among these reasons were plaintiff's alleged misuse of a police computer database, improper materials related to plaintiff found on MySpace, a social networking website, and the incident at the Wyoming Borough Police Department. (Id.). Defendants insist that the report also contained

---

[1]This counterstatement is part of plaintiff's statement of facts, but the numbering begins again.

references to a pattern of insubordination by the plaintiff, as well as conduct unbecoming a police officer. (Defendants' Response to Plaintiff's Counterstatement of Material Facts (hereinafter "Defendants' Response") (Doc. 49) at ¶ 12). Plaintiff never disscussed his use of the computer system or MySpace with any officials prior to his termination. (Plaintiff's Counterstatement at ¶ 13)

Much of the dispute in this case centers around plaintiff's employment status. Plaintiff contends that he was expected to be available to work when called, even if he was not scheduled to work those hours. (Plaintiff's Counterstatement at ¶ 1). Plaintiff had often been called to duty by the Borough during hours for which he was not scheduled. (Id. at ¶ 2). Plaintiff insists that he reported for duty whenever called, and never refused to work because of responsibilities from another job. (Id. at ¶ 3). Plaintiff also asserts that he served as part of the Pennsylvania Attorney General's Drug Task Force while working for the Borough. (Id. at ¶ 5). That work frequently led to calls for plaintiff to come to work on short notice. (Id.). Defendants contend that plaintiff had simultaneous employment in several different jurisdictions and was expected to work only when not engaged somewhere else. (Defendant's Response at ¶ 1). The parties dispute whether plaintiff was available to work in the Borough every day of the week. (Compare Plaintiff's Counterstatement at ¶ 6; Defendants' Response at ¶ 6). When plaintiff worked for the police department, he performed his regular duties. (Plaintiff's Counterstatement at ¶ 7).[2] The parties dispute whether

---

[2]Pointing to plaintiff's alleged improper conduct at work, defendants dispute plaintiff's claim, contending that this behavior was not proper for a police officer. (Defendants'

4

plaintiff's work for the Borough's Police Department was his main source of income. (Id. at ¶ 8; Defendants' Response at ¶ 8). Defendants contend that plaintiff regularly supplemented his employment with income from other jurisdictions. (Defendants' Response at ¶ 8). The parties likewise disagree over whether plaintiff's work with defendants was his primary employment. (Plaintiff's Counterstatement at ¶ 9; Defendants' Response at ¶ 9).

Plaintiff also contends that he engaged in regular police duties while working for the defendants, including answering 911 calls and conducting criminal and drug investigations. (Plaintiff's Counterstatement at ¶ 10). Defendants point out that plaintiff engaged in some unauthorized behavior while at work. (Defendants' Response at ¶ 10). Plaintiff also received a uniform allowance from the Borough. (Plaintiff's Counterstatement at ¶ 11).

Also in dispute in this case is the level of political activity in which plaintiff was involved before his termination. Plaintiff contends that he supported the election of defendants' political opponents to the West Pittston Borough Council. (Id. at ¶ 15). Defendant Goldsworthy ran for Borough of West Pittston Mayor in 2005 and was joined on the ticket by Defendants Thornton, Bugelholl, Musinski and Lescavage. (Id. at ¶ 22). They all ran as Republicans. (Id.). Plaintiff attended various functions, including breakfasts and parties held by the defendants' political opponents, and spoke in those candidates' favor with many people. (Id. at ¶ 15).

---

Response at ¶ 7).

He urged others not to vote for defendants. (Id. at ¶ 16). Defendants deny they were aware of plaintiffs' support for their opponents. (Defendants' Response at ¶¶ 15-16). Plaintiff disputes this. (Plaintiff's Counterstatement at ¶¶ 17-19). He contends that the firing of Police Officer Joseph Campbell became an issue in the campaign, and that he did not support the defendants' position. (Id. at ¶ 17). According to plaintiff, Defendant Musinski knew that plaintiff did not attend political activities in support of the defendants' preferred candidates. (Id. at ¶ 18). Defendants contend that Musinski's recollections of these events were more equivocal. (Id.).

Plaintiff alleges that Defendant Goldsworthy never took or recommended any adverse employment activity against him until after the 2005 primary election. (Id. at ¶ 20). Defendants respond to this allegation by stating that Mayor Goldsworthy suspended plaintiff in December 2005, but does not address the allegation that the mayor took no activity until after plaintiff's political activity. (Defendants' Response, at ¶ 20).

Plaintiff filed a complaint in this case on December 13, 2007 which raised seven claims. (See Doc. 1). After a stipulation entered into by the parties, two claims remain in the case. (Defendants' Statement at ¶ 3). The first of these remaining claims alleges First Amendment retaliation based on defendants' reaction to plaintiff's political participation. The second count is related to pre-deprivation due process.

After the close of discovery, the defendants filed a motion for summary

6

judgment. Magistrate Judge Carlson, to whom the case was assigned for pre-trial supervision, issued a report and recommendation on July 23, 2010. (See Doc. 52). Magistrate Judge Carlson recommended that the motion be granted and summary judgment entered for the defendants. (Id.). The plaintiff then filed objections. The parties briefed the issues, bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to 42 U.S.C. § 1983, the court has jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Legal Standard**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report to which objections are made. 28 U.S.C. § 636 (b)(1)(C); see also Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

The magistrate judge recommended that the court grant defendants' motion for summary judgment. Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114

7

F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. <u>International Raw Materials, Ltd. v. Stauffer Chemical Co.</u>, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. <u>Anderson</u>, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. <u>Id.</u> Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. <u>Celotex v. Catrett</u>, 477 U.S. 317, 322 (1986).

**Discussion**

Plaintiff raises several objections to the report and recommendation. The court will address each in turn, as appropriate.

**A. Due Process Claim[3]**

---

[3]The magistrate judge also concluded that plaintiff could not sustain a substantive due process or a "stigma-plus" loss of liberty interest claim. The plaintiff's memorandum

8

### i. Plaintiff's Property Interest in His Employment

Plaintiff first objects to the magistrate judge's conclusion that he could not prevail on his due process claim because he lacked a property interest in his continued employment.[4] Evidence exists by which a jury could conclude that plaintiff was a full-time police officer, and thus enjoyed a protected property interest under Pennsylvania law. Since plaintiff did not receive any pre-termination procedure, plaintiff insists that a jury could find for him on his due process claims.

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV. In this context, determining whether a state action deprived a plaintiff due process requries asking "whether the asserted individual interests are encompassed within the fourteenth amendment's protection of 'life, liberty, or property.'" Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008) (quoting Robb v. City of Philadelphia, 733 F.2d 286, 292 (3d Cir. 1984)). If such "protected interests" are implicated in the state action, the court must then determine whether the procedures applied in this case were sufficient to provide "due process of law." Id.

---

does not discuss these issues, and thus the court finds that plaintiff did not intend to pursue such causes of action or agrees with the magistrate judge that they are not sustainable.

[4]Plaintiff also contends that as a general matter the magistrate judge did not properly employ the standard for summary judgment. The magistrate judge, he insists, did not view the evidence in the light most favorable to the non-moving party, made improper credibility interpretations, and improperly credited the defendants' statements. As these arguments are merely statements about the proper legal standard and not specific objections to the report and recommendation's findings, the court will address the magistrate judge's use of the legal standard in evaluating the plaintiff's objections to his substantive findings.

9

There is no dispute that plaintiff did not receive notice or an opportunity to be heard prior to defendants' adverse employment action, and the court's inquiry thus focuses on the first part of this claim, whether plaintiff had a protected property interest in his employment. The magistrate judge concluded that plaintiff was only a part-time worker, and thus lacked any protected property interest. He therefore recommended that summary judgment be granted on the claim.

"To have a property interest in a benefit [like employment], a person clearly must have more than an abstract need or desire for it." Board of Regents v. Roth, 408 U.S. 564, 577 (1972). A plaintiff "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id. Thus, "once a court determines that a public employee 'held [he]r position at the will and pleasure of the [governmental entity,' such a finding 'necessarily establishes that [the employee] had no property interest' in the job sufficient to trigger due process concerns." Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005). The Constitution itself does not create such property rights; "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law–rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Roth, 408 U.S. at 577. Thus, state law determines whether such a property interest exists." Elmore, 399 F.3d at 282.

The plaintiff agrees with the magistrate judge that the state law applicable to these circumstances is 53 P.S. § 812, the Police Tenure Act. The Act provides, in

10

relevant part, that "[n]o person employed as a regular full time police officer . . . shall be suspended, removed or reduced in rank except for" a series of enumerated offenses. 53 P.S. § 812. Moreover, "[a] written statement of any charges made against any person so employed shall be furnished to such person within five days after the same are filed." Thus, if plaintiff were a full-time police officer, he would have an expectation of employment. He could only be removed for specific cause and would be entitled to notice of charges that could lead to his suspension or termination. Absent the operation of this act, plaintiff would be an at-will employee and not subject to due-process protections. See Elmore, 399 F.3d at 282 ("a public employee in Pennsylvania generally serves at the pleasure of her employer and thus has no legitimate entitlement to continued employment.").

The question here is therefore whether plaintiff was a full-time police officer. Under the Tenure Act, "the definition of what constitutes full-time employment with regard to the Act is not the number of days, length of hours, or terms of employment but instead whether [plaintiff] was available on call for duty at any and all times." Mullen v. Parkesburg, 572 A.2d 859, 861 (Pa. Commw. Ct. 1990). As grounds for concluding that plaintiff was not a full-time officer, the magistrate judge found that plaintiff had worked several other jobs during the time he served as a West Pittston officer. These other jobs meant that there had to have been occasions when plaintiff could not have been available for duty in West Pittston. Plaintiff responds to this finding by arguing that the evidence establishes that he was on-call to the Borough at all times. The Borough called him in to work at unscheduled times, and he never

11

refused such a call. These facts, plaintiff claims, create a question for the jury as to whether plaintiff was a full-time officer and entitled to property rights in his job.

The court will not adopt the report and recommendation on this point. The question for the court in this instance is whether there is evidence by which a jury could conclude that plaintiff was available and on call for duty with the West Pittston Police Department at any and all times. The magistrate judge concluded that plaintiff was not a full-time employee because he had other jobs and thus could not have been available at any and all times for his West Pittston duties. No evidence provided by the defendant, however, indicates that plaintiff ever failed to respond to a call for duty with the Police Department. Plaintiff submitted an affidavit, averring that he "was always expected to be available to work when called, even if" he was not scheduled to work at a particular time. (Plaintiff's Affidavit, Exh. 8 to Plaintiff's Statement, at ¶ 2). Plaintiff also contends that he always "responded as expected and reported for duty" as called. (Id. at ¶ 3). If a jury were to credit these claims, that jury could reasonably conclude that plaintiff was a full-time employee and subject to the protections of Fourteenth Amendment due process. Summary judgment is therefore inappropriate on this claim, and plaintiff's objection will be sustained.

**B. Retaliation Claim**

Plaintiff contends that defendants retaliated against him for his political activity on behalf of their election opponents by firing him from his police-officer position. The magistrate judge concluded that plaintiff had produced evidence that he was a

12

public employee and had engaged in a protected activity. The magistrate judge concluded, however that plaintiff did not have evidence that his First Amendment activities were a substantial or motivating factor in the decision to terminate him from his position. Plaintiff, the magistrate judge found, did not show that defendants were aware of his political activities, much less that defendants acted against plaintiff because of those activities.

Plaintiff here raises a First Amendment retaliation claim. In order to make out a First Amendment retaliation claim, the plaintiff must present evidence to show that he (1) engaged in a protected activity; (2) that the government took action against the plaintiff at the time of or after the protected action; (3) that the protected activity caused the government to take the action that harmed the plaintiff. Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997). An "employer may defeat the employee's claim by demonstrating that the same adverse action would have taken place in the absence of the protected conduct." Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005). The magistrate judge found that evidence existed by which a jury could conclude that plaintiff engaged in a protected activity and that the government took action against him at or near the time of this activity, but that he lacked evidence to support the third element of a retaliation claim. The magistrate judge also concluded that the adverse employment action would have occurred even absent the protected conduct. The plaintiff objects to these findings.

In claims of this sort "[t]o establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between

13

the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. v. Deflaminis, 480 F.3d 259, 267 (3d Cir. 2007). Absent such proof, "the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of fact should infer causation.'" Id. (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)).

The magistrate judge found that plaintiff could not establish a causal connection between plaintiff's protected activity and the adverse employment action. First, the magistrate judge found that no evidence existed to demonstrate that defendants were even aware that plaintiff had opposed their candidacies. The court will not adopt the report and recommendation on this point. Taking the evidence in the light most favorable to the plaintiff, the court finds that a jury could conclude that defendants were aware of plaintiff's political activity and associations. As explained above, there is evidence that defendants knew plaintiff supported opposing political candidates and refused to express political support for the mayor and his allies. Since protected activity can include "the right not to have allegiance to the official or party in power . . . irrespective of whether an employee is actively affiliated with an opposing candidate or party," there is evidence by which a jury could conclude that defendants were aware of plaintiff's political activity. Galli v. New Jersey Meadowlands Commission, 490 F.3d 265, 272 (3d Cir. 2007).

The magistrate judge also concluded that there was no evidence that defendants' actions against the plaintiff were motivated by plaintiff's protected

14

activity. The magistrate judge found that no causal connection existed between plaintiff's November 2005 suspension and his political activity because the new Borough Council had not been installed at the time of the suspension. (Report and Recommendation (Doc. 52) at 27). Moreover, the incoming council reinstated plaintiff, only terminating his employment after the March 2006 incident. Thus, the magistrate judge concluded, no evidence exists to support plaintiff's claim of a causal connection. The court disagrees. As related above, the plaintiff faced suspension after the primary election in 2005, and thus after he engaged in political activity. A jury could draw a connection between plaintiff's protected conduct and associations and this adverse action. Similarly, plaintiff's termination came shortly after the installation of a council he opposed. A jury could therefore find either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W., 480 F.3d at 267 (3d Cir. 2007). Moreover, given the evidence of a pattern of antagonism between the defendants and plaintiff, the jury could reasonably find that plaintiff has produced "'evidence gleaned from the record as a whole' [by which] the trier of fact should infer causation.'" Id. (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)).

Finally, the magistrate judge concluded that defendants would be entitled to summary judgment even if a jury found a causal connection between the protected activity and the adverse employment action. The magistrate judge found that the altercation at the Wyoming police office, as well as other alleged misconduct, "amply

15

demonstrates" that defendants would have taken the same adverse action even absent the protected activity. (Report and Recommendation at 28). The jury may ultimately agree with the magistrate judge on this score. Here, however, the court's duty is to determine whether evidence exists by which a jury could find for the non-moving party on this matter. As explained above, the facts of plaintiff's alleged misconduct and the altercation in Wyoming are disputed. As such, they are questions of fact for a jury to decide, and not grounds for summary judgment. The court will therefore decline to adopt the report and recommendation on this point and deny the defendants' motion on this claim.

**C. Punitive Damages**

Plaintiff also contends that evidence exists to support his claim for punitive damages. To obtain punitive damages on a Section 1983 claim, "defendant's conduct [must be] shown to be motivated by evil motive or intent, or . . . [involve] reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). According to the Third Circuit Court of Appeals, punitive damages require that "the defendant's conduct must be, at a minimum, reckless or callous. Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard." Savarese v. Agriss, 885 F.2d 1194, 1204 (3d Cir. 1989).

The court finds that evidence exists by which a jury could conclude that the defendants' behavior in terminating plaintiff after he engaged in political activity

16

supporting their opponents was at least caused by a reckless or callous indifference to plaintiff's First Amendment rights. If a jury finds that defendants purposefully fired plaintiff for his political activity, that jury could award the plaintiff punitive damages. The court will therefore deny the defendants' motion on these grounds as well.

**Conclusion**

For the reasons stated above, the court will sustain the plaintiff's objections to the report and recommendation and decline to adopt it. The court will therefore deny the defendants' motion for summary judgment. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DION FERNANDES,<br>    Plaintiff | : | No. 3:07cv2264 |
| | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| BOROUGH OF WEST PITTSTON;<br>MAYOR WILLIAM GOLDSWORTY;<br>TERRI BUGELHOLL;<br>BRIAN THORNTON;<br>KEVIN LESCAVAGE; and<br>PETE MUSINSKI,<br>    Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 30th day of August 2010, the plaintiff's objections (Doc. 54) to the report and recommendation (Doc. 52) of Magistrate Judge Martin C. Carlson are hereby **SUSTAINED**. The report and recommendation is **NOT ADOPTED**. The defendants' motion for summary judgment (Doc. 41) is hereby **DENIED**.

                                        BY THE COURT:


                                        s/ James M. Munley
                                        **JUDGE JAMES M. MUNLEY**
                                        **United States District Court**

18